**E-FILED on** 8/13/2012

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CEDAR FUNDING, INC.,<br><br>    Debtor. | No. C-12-00643 RMW |
| R. TODD NEILSON, CHAPTER 11 TRUSTEE,<br><br>    Plaintiff,<br><br>    v.<br><br>MONTEREY COUNTY BANK, ACCUSTOM DEVELOPMENT, LLC, DAVID A. NILSEN AND ANGELA NILSEN,<br><br>    Defendants. | ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING<br><br>[Re Docket No. 1] |

    Defendant Monterey County Bank ("MCB") moves for an order withdrawing the reference of an adversary proceeding currently pending before the bankruptcy court for this district. The trustee opposes the motion. Having considered the papers submitted by the parties, and for the reasons set forth below, the court denies the motion.

# I. BACKGROUND

This is an adversary proceeding brought by the Chapter 11 trustee for Cedar Funding, Inc. ("CFI") against MCB and others concerning real property located in Pebble Beach, California (the "Property"). The trustee seeks quiet title and declaratory relief establishing that "the interests in the Property of MCB, Accustom, Nilsen and those persons claiming through any of them, are subordinate to the interests of Plaintiff." Dkt. No. 4, Exh. 2 at 5-6.[1]

## A.   Factual Background

The relevant factual allegations have been ably summarized by the bankruptcy court after its review of multiple filings by the parties. Dkt. No. 4, Exh. 7 ("December 19, 2011 Order") at 2-4.[2] In short, the dispute concerns multiple loans that were secured by deeds of trust or liens against the Property. Initially, David A. Nilsen made a loan of $400,000 to Thomas P. Harrow secured by a deed of trust recorded in June 2001 ("First Deed of Trust"). Nilsen made an additional loan of $650,000 secured by a deed of trust recorded in December 2001 ("Second Deed of Trust"). In 2002, Nilsen sold fractionalized interests in the Second Deed of Trust to various third-parties, and the assignments were duly recorded. Thereafter, Harrow executed a grant deed conveying all his right, title, and interest in the Property to Accustom Development, LLC ("Accustom"). Between 2005 and 2007, CFI advanced an additional $2.6 million to Accustom allegedly secured by the Second Deed of Trust. CFI obtained most of these funds from investors, who purportedly were sold fractionalized interests in the loans. Then, in December 2007, Accustom sought to refinance the Property by borrowing $1.855 million from MCB. The MCB loan was secured by a new first deed of trust against the Property. MCB fully funded the escrow in January 2008, and the funds were made payable to or deposited in accounts controlled by Nilsen. The First Deed of Trust was reconveyed in May 2008, but the Second Deed of Trust was never reconveyed.

---

[1] The court grants MCB's request for judicial notice of certain documents filed before the bankruptcy court. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

[2] The bankruptcy court emphasized that it was not making any findings of fact but simply attempting to describe the claims presented. *Id.* at 2 n.2.

ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING—No. C-12-00643 RMW LJP
2

The trustee contends that MCB had actual or presumed notice of all the liens against the Property and therefore the Second Deed of Trust – and the bankruptcy estate's interest in that lien – is senior to MCB's deed of trust against the Property.

### B. Procedural History

The trustee commenced this adversary proceeding against MCB on October 20, 2008. Discovery is complete, and trial was set to begin in November 2011. However, on June 23, 2011, the Supreme Court issued its decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). MCB argued that *Stern* put the bankruptcy court's jurisdiction in question. The bankruptcy court rejected these arguments and declined to dismiss the adversary proceeding. *See* December 19, 2011 Order.

In denying MCB's motion to dismiss, the bankruptcy court construed the trustee's claims as "a request to determine what interest the bankruptcy estate has in the Property" and concluded that the claims are core matters under 28 U.S.C. § 157(b)(2)(O). *Id.* at 4-5. The court then discussed *Stern v. Marshall*, noting that its actual holding "is quite limited" but "[t]he majority opinion's broad language . . . gives this court serious pause." *See id.* at 6-9. Ultimately, the court concluded that *Stern v. Marshall* did not deprive it of constitutional authority to enter a final judgment in this adversary proceeding because the trustee's claims "are not counter-claims filed against a creditor who filed a claim in this bankruptcy case, but instead are claims seeking a determination of what is property of the bankruptcy estate." *Id.* at 7. The court reasoned that "a bankruptcy court's determination of what is property of the bankruptcy estate is at the heart of the Bankruptcy Code," and "the concept of property of the bankruptcy estate is a fundamental creation of the Bankruptcy Code." *Id.* If a bankruptcy court could not determine what is the property of a bankruptcy estate, "its authority would be so fractured as to almost render the reorganization process too unwieldy to pursue in an Article I court," and such a result would be inconsistent with the Supreme Court's statement that *Stern v. Marshall* would not meaningfully change the division of labor in the current bankruptcy statute. *Id.* at 8. In addition, the court found, determining what is property of the bankruptcy estate stems from the bankruptcy itself, and therefore satisfies the test articulated in *Stern*. *Id.*

In the alternative, the bankruptcy court concluded that *Stern* did not preclude it from trying the trustee's claims and submitting proposed findings of fact and conclusions of law to the district court. *Id.* at 9. It concluded: "Simply put, this court intends to try this adversary proceeding." *Id.* at 10. After the bankruptcy court issued its order, MCB filed the present motion for an order withdrawing the reference.

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  Referral and Withdrawal of Reference

28 U.S.C. § 157(a) permits district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for the district. *See also* General Order No. 24. When a case or proceeding is referred to the bankruptcy judges, the district court may withdraw the reference "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997).

#### 2.  The Bankruptcy Court's Authority

28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments . . . ." § 157(b)(2) lists non-exclusive categories of matters that are considered "core proceedings," including "(A) matters concerning the administration of the estate," "(C) counterclaims by the estate against persons filing claims against the estate," "(H) proceedings to determine, avoid, or recover fraudulent conveyances," and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."

Under § 157(c)(1), bankruptcy judges may also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."

> In such a proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be

ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING—No. C-12-00643 RMW LJP
4

> entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

In its recent decision of *Stern v. Marshall*, 131 S.Ct. 2594 (2011), the Supreme Court held that, even when a proceeding falls within the statutory definition of "core," it may be unconstitutional under Article III for a bankruptcy judge to enter final judgment. The Court relied in part on its earlier decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), which held that a noncreditor has a right to a jury trial when sued by a bankruptcy trustee for fraudulent conveyance. In *Granfinanciera*, the Court found that fraudulent conveyance actions "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." 492 U.S. at 54-55. Similarly, the counterclaim at issue in *Stern* was "in no way derived from or dependent upon bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding." 131 S.Ct. at 2618. The *Stern* Court stated:

> *Granfinanciera*'s distinction between actions that seek "to augment the bankruptcy estate" and those that seek "a pro rata share of the bankruptcy res," [492 U.S. at 56], reaffirms that Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.

*Stern*, 131 S.Ct. at 2618.

The Court in *Stern* also addressed the practical argument "that restrictions on a bankruptcy court's ability to hear and finally resolve compulsory counterclaims will create significant delays and impose additional costs on the bankruptcy process." *Id.* at 2619. The Court observed that the statutory framework already contemplated that the bankruptcy judges would abstain from hearing certain claims, including core matters, and provided for *de novo* district court review of matters that are "related to" the bankruptcy proceedings. *Id.* at 2619-20. The Court noted that

> [Appellee] has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one.

*Id.* at 2620 (citations omitted). The court summarized its holding as follows:

> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.

*Id.*

In light of the Supreme Court's decision, the Ninth Circuit is currently considering the following questions:

> Does *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), prohibit bankruptcy courts from entering a final, binding judgment on an action to avoid a fraudulent conveyance? If so, may the bankruptcy court hear the proceeding and submit a report and recommendation to a federal district court in lieu of entering a final judgment?

*Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 661 F.3d 476 (9th Cir. 2011) (order inviting supplemental briefs by amicus curiae).

### B. Whether the Bankruptcy Court May Constitutionally Decide This Proceeding

As an initial matter, the court assumes that this adversary proceeding constitutes a "core" matter under § 157(b)(2), as the bankruptcy court has found, December 19, 2011 Order at 4-5. MCB asserts in certain parts of its motion that plaintiff's claims are non-core but presents no supporting argument. Moreover, as plaintiff points out, the bankruptcy court has authority under § 157(c)(1) to hear non-core proceedings and submit proposed findings and conclusions to the district court, and *Stern* does nothing to undermine that authority. Thus, if MCB were seeking withdrawal of reference of a non-core proceeding, it could have made a motion at the start of the adversary proceeding. *See* 28 U.S.C. § 157(d) (providing for withdrawal "on timely motion of any party"). MCB's only argument for why its motion is timely at this stage is the recency of the *Stern* decision. Thus, the court proceeds directly to the issue of *Stern*'s impact on the bankruptcy judge's authority to hear and determine statutorily core matters.

*Stern* has prompted many decisions by lower courts exploring the scope of bankruptcy courts' authority to enter final judgment in core proceedings. Most courts have read *Stern* narrowly, based on its own language that it is a narrow decision and on its holding that Congress exceeded Article III's limitations "in one isolated respect." *See, e.g.*, *Deitz v. Ford (In re Deitz)*, 2012 Bankr.

LEXIS 1968 at *12-15 (B.A.P. 9th Cir. 2012). Those courts reading *Stern* more broadly have generally been concerned with fraudulent conveyance actions, which perhaps follows naturally from *Stern*'s language, borrowed from *Granfinanciera*, about "augmenting" the bankruptcy estate at the expense of third parties. *See id.* at *15-16 (collecting cases). Even there, a split of authority exists, with some courts concluding that fraudulent conveyance actions may still be determined by bankruptcy courts. *See, e.g.*, *In re Safety Harbor Resort & Spa*, 456 B.R. 703, 716-17 (Bankr. M.D. Fla. 2011) (finding the *Stern* Court's reliance on *Granfinanciera* did not actually limit bankruptcy courts' jurisdiction to resolve categories of core proceedings not at issue in *Stern*, including fraudulent conveyance or preference actions).

  MCB argues that this proceeding, like a fraudulent conveyance action, is an effort to augment the estate. However, the bankruptcy judge concluded that the claims are better characterized as a request to determine what is property of the bankruptcy estate, which is an issue that stems from the bankruptcy itself.[3] Other courts agree that bankruptcy courts have authority to determine what is and is not property of the bankruptcy estate in the wake of *Stern*. *See BankUnited Fin. Corp. v. FDIC (In re BankUnited Fin. Corp.)*, 462 B.R. 885, 893-94 (Bankr. S.D. Fla. 2011); *Burns v. Dennis (In re Se. Materials, Inc.)*, 2012 Bankr. LEXIS 1283 at *37-39 (Bankr. M.D.N.C. 2012). MCB argues that the trustee is making an unwarranted assumption that the property is already part of the estate, and if the status of the property were truly undisputed, this would be styled as a turnover action. However, courts have exercised authority in declaratory actions to determine whether property belongs to a bankrupt's estate. *See BankUnited*, 462 B.R. at 895-901 (concluding tax refunds are property of the bankrupt holding company under a tax allocation agreement); *cf. Burns*, 2012 Bankr. LEXIS 1283 at *37-38 (finding it undisputed that the court has authority to determine what is property of the bankruptcy estate but noting "these claims seek more than a declaratory judgment about property of these [sic] estate").

  The issue of the bankruptcy court's jurisdiction here appears to turn in part on how the trustee's claim is characterized. MCB essentially argues that it is an unrelated third party, who never

---

[3] MCB asserts that the bankruptcy judge "acknowledged the difficulties in reconciling the differing analyses by various courts," Motion at 11:6-7, but MCB appears to have cited or attached the wrong exhibit, and the court was unable to find the reference.

ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING—No. C-12-00643 RMW LJP
7

filed a claim in the main bankruptcy proceeding, who is being drawn into litigation by the trustee's effort to reach out and "augment" the bankruptcy estate. On the other hand, the bankruptcy judge found that the trustee simply wanted a declaration of what is property of the estate. Unlike a fraudulent conveyance action, the interests at issue here were not all clearly conveyed to MCB. In fact, MCB apparently admits that the Second Deed of Trust was not reconveyed and instead is contending that no funds are still owing that could be collected on the Second Deed of Trust and, under Cal. Civ. Code § 2943, "a trust deed must be reconveyed when the debt it secures is paid." Dkt. No. 1-1 at 4:21-5:4. Although to go too far in adopting either party's characterization of the claims would seem to amount to pre-judging the merits, the court finds that this case is sufficiently unlike a fraudulent conveyance action that *Stern* does not clearly bar the bankruptcy court's jurisdiction. In light of the bankruptcy judge's understanding of what the claims entail, and the cases confirming a bankruptcy court's ability to determine what is property of the estate, the court finds that the bankruptcy judge may constitutionally hear and determine this adversary proceeding.

### C.     Whether to Withdraw the Reference

MCB does not argue that the reference should be withdrawn if, even after *Stern*, the bankruptcy judge has full authority to hear and determine this proceeding. The court also does not find any reason that the reference should be withdrawn in light of its conclusion above.

Furthermore, even if *Stern* prohibits the bankruptcy judge from entering final judgment, the court finds that the multi-factor analysis for permissive withdrawal favors leaving this proceeding with the bankruptcy judge for trial. In this, the court finds *Heller Ehrman, LLP v. Arnold & Porter, LLP (In re Heller Ehrman, LLP)*, 464 B.R. 348 (N.D. Cal. 2011), to be instructive.

Examining the *Security Farms* factors, this court first notes that this proceeding is but one in a large, complex bankruptcy. The bankruptcy judge is familiar not only with the facts and issues in this proceeding but also with the context of this proceeding within CFI's pre-bankruptcy operations and the bankruptcy proceedings as a whole; on the other hand, this court would need to learn all the facts and issues anew. *See Heller Ehrman*, 464 B.R. at 358-59 (finding judicial efficiency is not served by withdrawing the reference "where the bankruptcy judge has a high level of familiarity with the action as [a] whole, has already presided over motions and the resolution of many of the

actions, and has familiarity with the legal issues"). Although the bankruptcy court's proposed findings would be subject to *de novo* review by this court upon a party's specific objection, it is not clear that any delay and costs associated with that process would outweigh the efficiency gains from allowing the bankruptcy court to try the case in the first instance. *See id.* at 360. Withdrawal would also undermine the uniform administration of bankruptcy proceedings, as this court lacks both the bankruptcy judge's expertise in that area of law and his familiarity with this particular bankruptcy. *See id.* ("[W]here bankruptcy judge had significant exposure to many relevant factual and legal issues through bankruptcy proceedings, he can best address this particular adversary proceeding while ensuring the uniform, efficient administration of the entire bankruptcy estate, and that this matter will proceed through bankruptcy with minimal delay." (quoting *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 224 (D. Haw. 2006)).

MCB's primary argument that the reference should be withdrawn is that it is unclear after *Stern* whether the bankruptcy judge even has authority to "hear" this adversary proceeding. As framed by MCB, *Stern* creates a third category of proceedings – those that are statutorily "core" but neither "arise under" nor "arise in" Title 11 – and the bankruptcy statute has no provision for bankruptcy judges to exercise any authority over such proceedings. The court recognizes that the Ninth Circuit has asked for amicus briefing concerning that issue, but the court is nonetheless skeptical of MCB's interpretation of *Stern*. Many courts have noted the Supreme Court's language that *Stern* is a narrow decision that does not meaningfully change the distribution of labor set forth in the statute. *See, e.g.*, *Heller Ehrman*, 464 B.R. at 355-56. Abolishing the bankruptcy court's authority to even hear an entire category of proceedings would certainly be a meaningful change. Moreover, *Stern*'s holding does not address the bankruptcy court's authority to "hear" any proceedings, only its authority to "determine" or enter final judgment in a specific category of core proceedings. Thus, a more sensible interpretation would be that Congress' explicit grant of authority to "hear" both core and non-core proceedings stands untouched, but *Stern* has narrowed the scope of proceedings which a bankruptcy court may "determine." *See also id.* at 355 ("Since Congress delegated broader authority to bankruptcy courts in core matters than non-core matters, . . . there appears to be no reason why bankruptcy courts cannot continue to hear all pre-trial proceedings and

enter as an appropriate order proposed findings of fact and conclusions of law in the manner authorized by Section 157(c)(1)."); *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 464 B.R. 807, 812 (Bankr. E.D. Wis. 2012) ("Permitting a bankruptcy court to submit proposed findings of facts and conclusions of law in these circumstances also comports with Supreme Court precedent that a court should refrain from invalidating more of a statute than is necessary.").

MCB cites only two cases to support its view that the bankruptcy court lacks authority to even submit proposed findings and conclusions. And even those cases did not result in the withdrawal of claims referred to the bankruptcy courts. In *Samson v. Blixseth (In re Blixseth)*, 2011 WL 3274042 (Bankr. D. Mont. 2011), the court did initially adopt the reasoning MCB advocates and conclude that

> Unlike in non-core proceedings, a bankruptcy court has no statutory authority to render findings of fact and conclusions of law for core proceedings that it may not constitutionally hear. While 28 U.S.C. § 157(c)(1) allows a bankruptcy judge to render findings and conclusions in "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," no other code provision allows bankruptcy judges to do the same in core proceedings. . . . Since this Court may not constitutionally hear the fraudulent conveyance claim as a core proceeding, and this Court does not have statutory authority to hear it as a non-core proceeding, it may in no case hear the claim.

*Id.* at *12. The court gave the parties fourteen days to move the district court to withdraw the reference before it would dismiss the fraudulent conveyance claims for lack of subject matter jurisdiction. *Id.* However, the court later held that its initial decision was "flawed in one respect" because *Stern* did not deprive the bankruptcy courts of subject matter jurisdiction. *See Samson v. Blixseth (In re Blixseth)*, 463 B.R. 896, 905-07 (Bankr. D. Mont. 2012). Thus, the court amended its previous order to outright deny the motion to dismiss. *Id.* at 907.

In *Ortiz v. Aurora Health Care (In re Ortiz)* ("*Ortiz I*"), 665 F.3d 906 (7th Cir. 2011), the court dismissed a direct appeal from the bankruptcy court's summary judgment order because, in light of *Stern*, the bankruptcy court had no authority to enter final judgment, and there was no statutory basis for the court's appellate jurisdiction. *Id.* at 908-09. As part of its analysis, the court found that the bankruptcy court's orders were not interlocutory under 28 U.S.C. § 158(a)(3) nor final decisions, judgments, orders, or degrees under 28 U.S.C. § 158(d)(1). *Ortiz I*, 665 F.3d at 915. It further found

> For the bankruptcy judge's orders to function as proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1), we would have to hold that the debtors' complaints were "not a core proceeding" but are "otherwise related to a case under title 11." *Id.* As we just concluded, the debtors' claims qualify as core proceedings and therefore do not fit under § 157(c)(1).

*Ortiz I*, 665 F.3d at 915. The court remanded the cases to the bankruptcy court, stating "[u]nless and until an Article III judge enters a final judgment, we have no jurisdiction to review these matters." *Id.* On remand, the bankruptcy court found that it was appropriate to submit proposed findings of fact and conclusions of law to the district court. *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)* ("*Ortiz II*"), 464 B.R. 807, 810-12 (Bankr. E.D. Wis. 2012). The court acknowledged that the Seventh Circuit's language "suggest[ed] that entering proposed findings and conclusions may not be appropriate in a core proceeding" but noted that the statement was made in the context of whether the statute authorized the court of appeals to review a bankruptcy judge's proposed findings and conclusions. *Id.* at 810. The court reasoned:

> The statutory scheme clearly does not contemplate a direct appeal of proposed findings and conclusions. Rather, proposed findings and conclusions are considered by the district court de novo, and the district court enters the final order. The Court of Appeals did not expressly prohibit the entry of proposed findings and conclusions on remand; it merely observed that, like the bankruptcy court in *Stern*, this Court had not followed this procedure in a core proceeding.

*Id.* (citations omitted). The court went on to conclude that using the proposed findings procedure of § 157(c)(1) was appropriate, analyzing the language in *Stern* itself and collecting numerous district and bankruptcy court cases from around the country. *Id.* at 810-12.

This court agrees with the majority view on this issue: even if *Stern* prohibits a bankruptcy court from entering final judgement in a particular statutorily core proceeding, the bankruptcy courts may still hear the proceeding and submit proposed findings to the district court. The court acknowledges that if the Ninth Circuit ultimately concludes otherwise, that could nullify much of the bankruptcy court's efforts and require extensive new proceedings before this court – assuming this court's conclusion that *Stern* does not render this proceeding unconstitutionally core were also overturned. However, the court finds that this speculative risk is insufficient to justify the additional consumption of judicial resources that would immediately result if the court were to withdraw the reference. *See also Heller Ehrman*, 464 B.R. at 361 & n.6 (declining to exercise its discretion to withdraw the reference after noting the Ninth Circuit's request for briefing in *Executive Benefits*

*Insurance Agency v. Arkison* and stating "the parties are free to renew this motion at a later date based upon the ultimate resolution of that case").

### III. ORDER

For the foregoing reasons, the court denies Monterey County Bank's motion for an order withdrawing the reference.

DATED:     August 13, 2012     
RONALD M. WHYTE
United States District Judge